*S E A L E D   R E C O R D*                                    1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X    S E A L E D   R E C O R D

UNITED STATES OF AMERICA,  :
                                   CR-02-307 (NGG)

     -against-                     United States Courthouse

                           :       Brooklyn, New York

JOSEPH MASSINO,

          Defendant.
                           :       July 30, 2004
                                   Ten o'clock a.m.
- - - - - - - - - - - - - - - X

          TRANSCRIPT OF TRIAL
          BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
          UNITED STATES DISTRICT JUDGE, and a jury.

APPEARANCES:

For the Plaintiff:      ROSALYN M. MAUSKOPF
                        United States Attorney
                        BY:  GREG ANDRES
                             MITRA HORMOZI
                             ROBERT HENOCH
                        Assistant United States Attorneys
                        225 Cadman Plaza East
                        Brooklyn, New York 11201

                        ADAM SCHWARTZ
                        Assistant United States Attorney
                        Civil Division


For the Defendant:      DAVID BREITBART, ESQ.
                        FLORA EDWARDS, ESQ.




Court Reporter:         Marsha Diamond
                        225 Cadman Plaza East
                        Brooklyn, New York
```

*MARSHA DIAMOND, CSR*
*OFFICIAL COURT REPORTER*

*S E A L E D    R E C O R D*    2

```
                    TEL: (718) 260-2489
                    FAX: (718) 254-7242
```

Proceedings recorded by mechanical stenography, transcript produced by CAT.

THE CLERK: United States versus Joseph Massino

(The follows too took place in the came)

THE COURT:  The Court was advised by the Marshal that something that needs to be placed on the record.

DEPUTY CHRISTIAN NANARY:  Basically, I took Mr. Massino into the back room where he has to use the restroom.

THE COURT:  When was this?

DEPUTY CHRISTIAN NANARY:  This was right before the asset phase and we took a five-minute break. Took Mr. Massino into the back room.  While I was there Mr. Massino asked me if there is any way that he could talk to the gentleman who is the FBI agent on the case privately, and at the time he said without an attorney, and I asked him what was it about, and he said that he tried to get Greg's attention because I believe that his attorneys were out of the room and he could not get Greg's attention so he wanted to ask Jeff --

THE COURT:  Meaning Mr. Andres.

DEPUTY CHRISTIAN NANARY:  Thanks, yes.  Sorry.

THE COURT:  Jeff, meaning Mr. Sallet's (ph)?

DEPUTY CHRISTIAN NANARY: He wanted to get Mr. Sallet's attention. He basically said that he wanted to talk to Mr. Sallet to work something out, and that's about all

*S E A L E D    R E C O R D*  3

1  he said. So --
2              THE COURT: All right. This was brought to my
3  attention, so I have to make a record of it. If it's
4  Mr. Massino's desire to have a conversation with the
5  government, then the question would be if that is, indeed, the
6  case and shadow counsel needs to be appointed, I need to be
7  advised of that. We are in a very sensitive posture here, but
8  I wanted the record made that this conversation was had, and I
9  don't know if there is anything further for the Court to do,
10 but I am advising the government of the conversation was that
11 -.
12             MR. ANDRES: I am glad we are able to put this on
13 the record. Mr. Massino did try to get my attention during
14 the interim phase before the forfeiture. Obviously, I didn't
15 speak to him, but obviously, when he says we can work this
16 out, there is a variety of different implications from that.
17 If Mr. Massino were to want shadow counsel for anything, I am
18 saying when he says "work something out" he is talking about
19 the forfeiture proceeding. It could mean anything, but let's
20 assume for the moment he is talking about the forfeiture
21 proceeding, the jury comes back on Monday at 9:30, ten o'clock
22 and finds Mr. Massino liable for forty million dollars
23 ten million dollars, whatever it is, it's going to be a
24 judgment and it is not going to be reversible. If he is
25 talking about the limited sense of forfeiture allegation and

S E A L E D    R E C O R D    4

1  he is talking about settling that, and shadow counsel needs to
2  be appointed, is there any way that Your Honor could just
3  follow the procedure that we normally follow in these cases is
4  that Your Honor interviews the defendant without the presence
5  of anyone else and asks him what he wants, or if he wants
6  another lawyer appointed, shadow counsel. If Mr. Massino is
7  still here today, I am wondering if Your Honor could just
8  interview him however long it takes.
9             DEPUTY CHRISTIAN NANARY:  He is on his way down but
10 I could stop him.
11            THE COURT: Why don't you do it, so I can find out
12 what we are talking about here.
13            DEPUTY CHRISTIAN NANARY: I will stop him now.
14            (Whereupon, a call was placed by the Deputy)
15            THE COURT: Obviously, it make a difference what he
16 has in mind but I will have to make a judgment as to whether
17 it was necessary then to simply appoint shadow counsel.  I am
18 not going to share this information with anyone.
19            MR. ANDRES:  Nor the government.
20            THE COURT:  All right. Thank you, very much,
21 everybody.
22            (Mr. Andres exited)
23            DEPUTY CHRISTIAN NANARY:  I will go get him,
24 Your Honor)
25            (Whereupon, Mr. Massino enters chambers)

*S E A L E D   R E C O R D*  5

1  THE COURT: Mr. Massino, you are represented by
2  counsel?
3  THE DEFENDANT: Yes, Your Honor.
4  THE COURT: However, I understood from the Deputy
5  that you had mentioned to him that you might want to talk to
6  Mr. Sallet or Mr. Andres about something, and I just wanted
7  to get a sense of whether this had to do with the forfeiture
8  phase, which we are in now or it had to do with something
9  else.
10  THE DEFENDANT: Something else.
11  THE COURT: All right. The procedure that will be
12  used is that if you wish to talk to the government, all right,
13  if you continue to wish to talk to the government, I would
14  appoint shadow counsel for you, so that you would never talk
15  to the government unless your attorney was present. It would
16  not be Mr. Breitbart, obviously, because I take it that you
17  desire to talk to the government with an attorney other than
18  Mr. Breitbart; is that correct?
19  THE DEFENDANT: Hundred percent.
20  THE COURT: Okay. So here's what I will do. I will
21  -- you know the case is going to go forward as you know.
22  THE DEFENDANT: I know.
23  THE COURT: But I will inform the government that I
24  will be appointing shadow counsel or you and then have you
25  come in to meet shadow counsel and then you will have an

*MARSHA DIAMOND, CSR*
*OFFICIAL COURT REPORTER*

S E A L E D   R E C O R D                                    6

1  opportunity to talk to shadow counsel at some point,
2  hopefully, on Monday, when the proceedings are over.
3            THE DEFENDANT:  After it is over.
4            THE COURT:  I will keep you in the courthouse after
5  everyone had left and then have a separate proceeding where
6  you would talk to shadow counsel and whatever you decided to
7  do, that would be up to you because of the right to do
8  whatever it is you want to do you, but you must be represented
9  by an extremely capable criminal defense attorney who has no
10 connection with -- you know, there are many attorneys who have
11 conflicts because there are 70 or so defendants who have been
12 indicted in various portions of these racketeering
13 indictments.
14           THE DEFENDANT:  I understand.
15           THE COURT:  So I will follow up on it.  I will do my
16 homework and I'll let you know --
17           THE DEFENDANT:  -- okay --
18           THE COURT:  -- on Monday, and I just, for the
19 record, I want to thank you for being such a gentleman
20 throughout with the Court.
21           THE DEFENDANT:  Likewise, Your Honor.
22           THE COURT:  Thank you.
23           I won't be able to do it tonight. It won't be able
24 to accomplish this tonight.  It's Friday night in the
25 summertime.

*S E A L E D   R E C O R D* 7

1     THE DEFENDANT:  There's a lawyer that does know me,
2 he was a prosecutor, Jonathan Marks.
3     THE COURT: Well --
4     THE DEFENDANT: He does know me.
5     THE COURT: Do you know if he is representing anyone
6 at this time?
7     THE DEFENDANT: Yes I believe he represented Joey
8 D'Amico (ph).  I don't know if it would be possible to appoint
9 him.
10     THE COURT: I am glad you mentioned that.  I will
11 inquire.
12     THE DEFENDANT:  I am pretty sure.
13     THE COURT: Did he represent him?
14     THE DEFENDANT:  No.  When he was cooperating.
15     THE COURT:  In this case?
16     THE DEFENDANT:  In this case, yes.
17     THE COURT:  Thank you, very much.
18     Have a good weekend.  Take care.
19     THE DEFENDANT:  So as far as Monday, I am just going
20 go on like everything is normal.
21     THE COURT: Everything is normal but you know, what I
22 think I understand is that you need to talk to --
23     THE DEFENDANT:  --  one hundred percent --
24     THE COURT:  -- counsel, and then you'll take
25 whatever steps are appropriate if you feel it's in your

*MARSHA DIAMOND, CSR*
*OFFICIAL COURT REPORTER*

*S E A L E D   R E C O R D*   8

1   interest after talking to the shadow counsel.
2         THE DEFENDANT:  Very good, Your Honor.
3         THE COURT:  Thank you.
4         THE DEFENDANT: Thank you, Your Honor.
5         (The defendant exited)
6         THE COURT:  This record is sealed.
7         (Whereupon Mr. Andres and Agent Sallet enter).
8         THE COURT: All right. On the record, I spoke with
9   the defendant Mr. Massino. He indicated to me that he wants
10   shadow counsel appointed in order to talk to the government
11   about matters other than the forfeiture proceeding.
12         MR. ANDRES:  Okay.
13         THE COURT:  And so, I'm going to appoint shadow
14   counsel, and I am going to try to do it on Monday because
15   Mr. Massino will be in the building anyway.
16         MR. ANDRES:  Okay.
17         THE COURT:  Now, I am not quite sure who I am going
18   to get, but it will have to be someone who I believe is highly
19   capable of dealing with this somewhat delicate situation. He
20   mentioned one attorney, Marks, who represented D'Amico.  He
21   conflicted out.
22         MR. ANDRES:  Based on his representation he will be
23   conflicted on two bases; one, he represented D'Amico, he
24   prosecuted James (ph) because he was an Assistant United
25   States Attorney in 1975.

*S E A L E D    R E C O R D*  9

1  THE COURT: Oh, Mr. Massino seems to have a very
2  high regard for Mr. Marks.
3      MR. ANDRES: That case was dismissed. Based on the
4  post arrest statements were thrown out by the Judge. It was
5  dismissed.
6      THE COURT: I will deal with it.
7      MR. ANDRES: Would Your Honor be interested in any
8  recommendations?
9      THE COURT: You can make them if you want.
10 Certainly, I'm going to do my own review, but if you have any
11 suggestions, you know, I will interview the potential shadow
12 counsel. My goal is to have the best possible most capable
13 brightest and most helpful lawyer for the defendant dealing
14 with his -- whatever it is he wants to suggest or do because
15 not only has he been convicted of these very serious crimes
16 which bring with them a life sentence, mandatory life
17 sentence, but also, he's being prosecuted for death penalty
18 eligible crime and so, I want to be extremely careful and
19 thorough. So if any names, give them to Mr. Recoppa.
20     MR. ANDRES: I will do that.
21     THE COURT: Leave it on his voicemail.
22     MR. ANDRES: I will send a fax, but my main concern
23 is, Your Honor, pertains to conflicts because there are so
24 many defendants and so many different cooperating witnesses
25 who have attorneys. Most of those individuals, their

*S E A L E D   R E C O R D*                              10

attorneys would be conflicted out in some way or another. That's my main concern, but I will go and speak to my supervisor. We generally have a list that when, like for example, when some of the cooperating witnesses who came off the street, we gave them a list of people who we recommended, and we will try to come with a list for the Court.

Thank you, Judge.

THE COURT: Well --

MR. ANDRES: Agent Sallet asked me about the forfeiture proceeding but -- it sounds like Mr. Massino wants to go forward with that.

THE COURT: I think he made it clear to me that -- I asked him whether his desire to speak to you had anything to do with the forfeiture proceeding and he said no. I also told him that I expected to see him on Monday, and the forfeiture proceeding was before the jury and it was going to continue. He said he understood that, but this was a separate and distinct matter.

MR. ANDRES: I'll fax those names over.

THE COURT: Why don't you fax them to the office fax. How many names do you --

MR. ANDRES: I am sure we can put together a list of five names.

THE COURT: And I will also mention that there may be names of attorneys who -- are those all going to be CJA

*S E A L E D   R E C O R D* 11

1  lawyers?  I may appoint someone just for the purposes of this
2  case who is not CJA.
3          MR. ANDRES:  I think that makes sense.
4          THE COURT:  Do you have any suggestions of people
5  who are not CJA or who are up to this kind of very challenging
6  task, you know, feel free to suggest those people as well.
7          MR. ANDRES:  Thank you.  Great.
8          THE COURT:  Thank you, very much.
9          This proceeding is sealed.
10         (Proceedings adjourned as above set forth)
11              *  *  *  *  *  *  *  *